Per curiam

it is not stated in the plea, nor clearly admitted at the bar, whether the Plaintiff was ever a citizen of this country, or only resided here, in the time of the formation of the new government. If he only resided here, and never became a citizen, he is to be considered as a British subject; and that perhaps may make his case very different from that of a citizen who attached himself to an enemy, and took up arms against the country.
Counsel for the Plaintiff — He never was a citizen — ■ the counsel on the other side cannot say he was — the plea does not state him to ha\ e been a citizen at the time of his departure.
Per curiam — We will take time to consider of the plea, and give judgment sometime before the end of the term. After a few days they gave judgment.
Per curiam — All persons in general, as well foreigners as citizens, may come into this court to recover rights withheld, and to obtain satisfaction for injuries done, unless where they are subject to some disability the law* imposes. Foreigners are in general entitled to sue, unless a war exists between our country and theirs. The 10.1st section-of 1777, c. 2, is certainly repealed as to all British subjects, by the 4th article of the treaty ; winch is to be regarded as law paramount, the acts of any State Legislature to the contrary, until that treaty shall become suspended by the sovereign authority entrusted with the power to suspend it. Each department " ment empowered to do a sovereign act pels fairs of the government, must in doing lish what the whole people, and every® bound by as done by competent authority pealed by 1787, c. 1, declaring this article of the law of the land. As to British subí much to be doubted, whether the mere act the war by a treaty of peace, did not. repeal That restores them witli regard to this country? condition of alien friends, and to all the rights belonging ro that character, one of which is, the right of commenc*. mg a prosecution. It is incompatible with a state of national friendship, and is a cause for war, if the citizens *395 ()( another country are not allowed to sue for and .obtain redress of wrongs in our courts. But however, this may he, British subjects by the 4th article of the treaty, are to be entitled to recover their debts, and this they cannot do without instituting suits, guando aliquid conce.-dilur, conbeditur ut id, -sine qua non pervenitur ad illud. The Plaintiff is not stated by the plea to have been a citizen ; we cannot say he was — but say he was a citizen, the laws may suspend the right of suing for a certain time, or Until a certain period, either to all the citizens with respect to certain cases, as was done in 1783; or to a description of citizens coming under particular circumstances, as citizens for instance who had notoriously joined the enemies of the country. It would have been equally impolitic to have, suffered them to recover in the time of war, although they could not be arrested so as to be convicted of treason, as to have suffered a British subject to recover. The reason for excluding the latter, applied with equal force to the exclusion of the former. The fact of joining the enemy, upon a plea in disability, might be ascertained by a jury as well as any other fact. This would not he ascertaining a fact for the purpose of punishing the party for his treason, but for the purpose of excluding him for the present from our courts of justice. In the same manner as the fact of being an alien enemy is found, and operates when found. This clause seems to have been made with a view to the war then carrying on, to prevent, those inimical to us from getting into their possession,"any of the wraith of the country, which might enable them to fight us witii more advantage. Considering it in this light, it'would seem as if the clause itself should expire with the. war, the terminating that being a providing otherwise within the words of the act, and that termination effected by those who were vested with power to do that act of sovereignty that was absolutely binding upon every State, notwithstanding any particular act of the State Legislature to the contrary remaining unrepealed by the State Legislature. But there are sundry acts of the Legislature, which have repealed this clause with respect to the greater number of citizens who had fallen under its operation. By 1783, c. 6, all manner of treasons, misprisions of treason, felony or misdemeanor, committed since the 4th July, 1776, are pardoned and put in total oblivion : but that *396 fití is not to pardon or discharge, or give any benefit to persons who have taken commissions, or have been denominated officers, or acted as such, or to such as have attached themselves to the British and continued without the limits of the State, ami returned within twelve months before the passing the act: and nothing in that act is to he so construed as to bar any citizen from his civil action for the recovery of debt or damages. By this act all the citizens of the State are pardoned all treasons and misdemeanors, except those who have borne offices in the enemy’s service, or having been in their service as private men, had not returned within 12 mouths before the passing the act. Now if a disability to sue is inflicted as a punishment for attaching himself to the enemy, then the pardoning of that must of course take away the disability. Quando subtollitur causa, subtollitur etiam effect us. Then the 101st section is repealed as to all citizens hut those of the two descriptions mentioned in the act. By 1784, c. 20, all persons who attached themselves to the enemy, or aided them in the prosecution of the war, are disabled to hold sundry offices specified in the act $ and there is a proviso annexed, that that act shall not he so construed as to permit the return to the State of any person who acted as an officer after being a resident of the Slate, or who had not submitted to the laws of the State before the ratification of the definitive treaty. The Legislature supposed, and therefore probably intended that the general implication arising from this act would be, that all persons therein described, would be entitled to all the rights of citizens except those denied them in the act, and of course the right to return to tins State, unless hindered by an express clause, which they have made as to officers only. If such general implication was intended, and is restrained only as to officers, it follows that all other persons are restored to all the rights of citizenship, except the right of boingelectcd to certain offices; and then the 101st section of 1777, c. 2, is repealed as to all but those wlm had borne commissions in the enemy’s service, and particularly as to one description of persons who were continued subject to it by the act of 1783, namely, those, who had attached themselves to the enemy and remained without the limits of the State, and had ,not returned twelve months before the 18th of April, 1783.— To the same effect with the act. of 1784, is the act of 1785, 11. Supposing the Plaintiff to have been a citizen *397 wlio attached himself to the enemy, without having borne a commission in their service, or haying borne a commission to have submitted»to the laws of the. Sta-e before the ratification of the definitive treaty, he is entitled upon the construction of all these acts, now to institute his suit, and this plea does not. state, either that he bore a commission, or that he did not, submit to the laws of the State tyofore the ratification of (he definitive treaty. It is utir necessary to consider how far the section in question is repealed by the termination of the war, independent of any particular acts of the Legislature — for if (he Plaintiff was a citizen, then make the worst of the case, and by the acts mentioned, the 101st section is repealed as to him — it not being pretended that he is to be distinguished by either of the disqualifying characters before mentioned. If he was a British subject., then his right to sue for antecedent debts i> revived by the 4th article of the treaty, and this is such a debt. Let the plea in abatement be overruled, and the Defendant answer over.
There were several cases depending’ in this court upon the same pleas, and upon this opinion of the court being given, the picas were withdrawn and the Defendants pleaded in chief.
At Hillsborough, October, 1796, the three first causes on the argument docket, were standing upon pleas in abatement, and demurrer thereto for the same cause, and the pleas were overruled per Wumams and Haywood, without argument, upon the authority of the foregoing decision. Also at Fayetteville, 1796, a client of Mr. Williams, who had joined the enemy in the time of the late war, and who had given notice of moving for a writ of error, was suspended by a plea in disability. — that plea was now overruled and he was set at liberty to proceed.